IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| Jill and Ron Ryan, *et al.*, individually and on behalf of others similarly situated, | : : : : | |
| Plaintiffs, | : | No. 2:06-CV-0146 (WCO) |
| | : | |
| -against- | : | Class Action |
| | : | |
| Hidden Lake Academy, Inc., *et al.*, | : | |
| Defendants. | : | |
| | : | |

**MOTION AND INCORPORATED MEMORANDUM OF LAW OF THE
SETTLEMENT CLASS REPRESENTATIVES TO COMPEL
DEFENDANTS TO RESPOND TO PLAINTIFFS'
POST-JUDGMENT DISCOVERY REQUESTS**

**INTRODUCTION**

The Settlement Class Representative[1] plaintiffs, individually and on behalf of the Class, respectfully submit this motion to compel Defendants' compliance with plaintiffs' First Post-Judgment Set of Interrogatories (Doc. no. 96-4) and First Post-Judgment Request for the Production of Documents (Doc. no. 96-5) (collectively, the "Post-Judgment Discovery") attached, respectively, as Exhibits A and B. Plaintiffs issued this discovery after Defendants breached the Court's Final Judgment (Doc. 94) and the parties' settlement Stipulation by failing to pay to the Class the $400,000 Settlement Fund.

Contrary to plaintiffs' Post-Judgment Discovery requests, the parties' agreement to narrow and tailor those requests and, more importantly, the Court's directives during the hearing on March 20, 2009, the Defendants have failed to provide evidence supporting their claimed inability to pay. Worse yet, the limited evidence before the Court presently is contradictory concerning the bottom-line issue of Defendants' ability to pay. *Compare* Doc. no. 97 at ¶ 10 (where, in an

---

[1]   All capitalized terms not otherwise defined have the meanings set forth in the parties' Stipulation of Settlement dated December 13, 2007 (the "Stipulation"), which was filed with the Court that same day. (Doc. 85-3). The Settlement Class Representative plaintiffs include Doff Meyer, Robin Brecker, Walter Coles, Theresa Pines, Dr. Edward Roberson and Madeleine Roberson.

-1-

affidavit sworn to Jan. 19, 2009, defendant Buccellato asserts that the Defendants

lack an ability to pay to the Class anything "meaningful"), with Doc. No. 104 at

Exhibit A (where, in correspondence to educational consultants dated Feb. 27,

2009, defendant Buccellato states that HLA's "financial situation has dramatically

improved" and that "our program has *not* changed or been diminished *in any*

*way*") (emphasis added)).  In short, which is it?

The Court should compel the Defendants to provide evidence sufficient to

document their financial status.  The Court should also direct the Defendants to

pay the reasonable fees and expenses of plaintiffs' counsel in connection with this

motion and the other post-judgment proceedings plaintiffs have been forced to

pursue as a result of Defendants' default.

## PROCEDURAL BACKGROUND

1.      The parties entered into their settlement Stipulation on December 13,

2007 and submitted it to the Court that same day.  Doc. no. 85-3.  The settlement

obligated each of the Defendants -- including defendant Buccellato personally -- to

pay the Class the $400,000 Settlement Fund by December 31, 2008.  Extensive

proceedings then followed the submission of the parties' settlement Stipulation to

the Court -- and at a significant cost.  For example, the Court appointed a claims

administrator to give notice of the settlement to Class members and receive and process all claim forms filed by Class members and others.  (Doc. no. 89); notice was prepared and sent by the claims administrator to some 1,982 Class members and others; some 243 claim forms were prepared and submitted by parents whose children attended HLA and others seeking to share in the settlement  (Doc. no. 91-3); and the Court conducted multiple proceedings and issued multiple orders in connection with the parties' settlement.

2.    The Defendants have to date failed to pay the Class even *any* part of the Settlement Fund.  In addition, and as Defendants *admitted* during the March 20, 2009 hearing, at no time between December 13, 2007 (when the parties' settlement Stipulation was executed and submitted to the Court) and December 31, 2008 (the deadline for Defendants to pay) did Defendants advise plaintiffs or the Court of their alleged inability to pay.  Defendants defaulted despite the fact that they "collectively and individually, are each bound and obligated to timely pay personally the full Settlement Fund."  (Quoting parties' settlement Stipulation, Doc. 85-3 at ¶ 4(a)).  Instead of timely paying or advising the Court or the plaintiffs in any manner, on January 19, 2009 defendant Buccellato filed with the

Court an Affidavit conclusorily asserting that Defendants lack an ability to pay the class anything "meaningful". *See* Doc. no. 97 at ¶ 10.

      3.     Having been forced by Defendants' default to commence post-judgment proceedings, plaintiffs served Defendants with plaintiffs' Post-Judgment Discovery on January 7, 2009.[2]  Plaintiffs' Post-Judgment Discovery was issued pursuant to Rules 23, 69(a)(2), 33 and 34 of the Federal Rules of Civil Procedure, and seeks information regarding the Defendants' financial transactions and condition in view of their claimed inability to pay.  Plaintiffs also issued deposition notices for defendant Buccellato and other senior HLA officials. Plaintiffs issued this discovery also to enable plaintiffs to pursue post-judgment collection remedies, including to ascertain the location and existence of

---

    [2]     Copies of the Post-Judgment Discovery are attached as <u>Exhibits A and B</u> here and also were attached as exhibits to the Motion and Incorporated Memorandum of Law of the Settlement Class Representatives to Enforce Settlement and Judgment ("Motion to Enforce Settlement and Judgment") (Doc. nos. 96-4 and 96-5 filed Jan. 8, 2009).  That Motion remains pending before the Court.  In addition, plaintiffs filed a second motion regarding potential proceeds from a since-cancelled foreclosure.  Doc. no. 100.  That motion now appears moot at present, as that foreclosure has apparently been cancelled -- because Defendants reportedly paid down within the last few weeks several hundred thousand dollars to BB&T, the holder of a mortgage on certain HLA property.

Defendants' property in order to facilitate execution and garnishment under

Fed.R.Civ.P. 69(a)(1) and Fed.R.Civ.P. 64.

 4. Plaintiffs received Defendants' responses and objections to the Post-

Judgment Discovery on February 13, 2009 (attached as <u>Exhibit C</u>).

 5. On February 24, 2009, plaintiffs sent Defendants a letter (via counsel)

requesting that Defendants supplement their discovery responses.  Plaintiffs also

then offered to discuss the issues with Defendants in a good faith effort to resolve

them without burdening the Court with further motion practice (attached as

<u>Exhibit D</u>).

 6. On March 11, 2009, the parties conferred.  During that conference,

the parties reached an agreement providing that Defendants would produce

additional information relating to their claimed inability to pay.  The parties'

agreement was memorialized in a letter dated March 12, 2009 from plaintiffs'

counsel to Defendants' counsel (attached as <u>Exhibit E</u>).  That letter also requested

proposed dates to reset the depositions of defendant Buccellato and the senior

HLA officials.

 7. Plaintiffs failed to receive the agreed-upon document production.

Consequently, plaintiffs sent Defendants another letter on March 18, 2009 again

seeking that production. *See* <u>Exhibit F</u>. Late that evening, Defendants filed an ECF certification stating that they had made a supplemental discovery response and document production which was sent to plaintiffs via regular mail.

8.      On March 20, 2009, the Court held a telephone hearing on plaintiffs' then-pending motions for post-judgment relief.  During that hearing, the Court directed the Defendants to substantiate and document their financial condition and professed inability to pay the settlement.  Plaintiffs stated that they had not received Defendants' supplemental document production; Defendants replied that their production was being mailed to plaintiffs' counsel, and assured the Court that the supplemental production "*should be sufficient*".  *See* <u>Exhibit G</u> (Doc. no. 107) (emphasis added).  As a result, the Defendants denied plaintiffs from having that document production in advance of the March 20 hearing.

9.      Promptly after receiving Defendants' supplemental production (*see* <u>Exhibit H</u>), plaintiffs on March 23, 2009 sent Defendants a letter stating that Defendants' production was both insufficient to support their claimed inability to pay, and also even below that which Defendants had previously agreed to produce during the parties' meet and confer on March 11.  Plaintiffs' March 23 letter also

specified the particular deficiencies and made a request for the names of the

Defendants' treasurer(s), chief financial officer(s) and controller(s). *See* <u>Exhibit I</u>.

10.    On March 25, 2009, plaintiffs sent Defendants another letter

requesting Defendants' delinquent document production, and made a second

request for proposed dates to reset the depositions of defendant Buccellato and

others. *See* <u>Exhibit J</u>.

11.    Defendants responded by saying that they would produce only certain

limited bank statements from 2007 and 2008.  However, Defendants refused to

provide the balance of the documents that were agreed-upon during the parties'

March 11 meet and confer.  Plaintiffs reiterated their requests for the outstanding

documents and for proposed dates to reset the previously-noticed depositions.  *See*

<u>Exhibit K</u>.

12.    To date, the Defendants have failed to provide plaintiffs with any

additional responsive documents, and also failed to propose any dates to reset the

previously-noticed depositions.  Defendants have also failed to provide any of

Defendants' 2007 bank statements -- despite actually agreeing to produce these statements as part of their last communication on March 25.[3]

13.    The Defendants' continued resistance in documenting their own asserted inability to pay anything "meaningful" is rendered even more inexcusable by the following additional facts:

- Defendants waited until January 2009 -- after plaintiffs were forced by Defendants' default to seek post-judgment relief -- to advise the Court and the plaintiffs of their inability to pay despite the fact that this was more than one year after the parties' settlement was submitted to the Court, **and** months after the Court appointed a claims administrator, notice was prepared and sent to some 1,982 class members and others, and some 243 claims were prepared and submitted to share in the settlement by families whose children attended HLA, all in accordance with the Court's Final Judgment and all at a substantial cost;

- In their Response (Doc. no. 97) to plaintiffs' Motion to Enforce Settlement and Judgment, the Defendants made only a vague, open-ended promise that they "intend to issue payment under the terms of the [Court] approved settlement" at some undetermined time in the future following some unidentified refinancing they said they "intend" to take;

---

[3]    In accord with LR 37.1(a)(1) and Fed.R.Civ.P. 37(a)(1), plaintiffs' counsel hereby certify that plaintiffs have in good faith attempted to confer with the Defendants to resolve the asserted deficiencies in Defendants' interrogatory answers and document productions before filing this Motion.

- Defendant Buccellato has apparently *started* two new schools, Mountainbrook Academy and Creekside Wilderness Academy, within the past several months. *See* www.mountainbrookacademy.org; www.creeksidewildernessacademy.com;

- In correspondence dated February 27, 2009 addressed to "Educational Consultants", defendant Buccellato stated that HLA's "financial situation has dramatically improved, and our budget projections for our financial future are very positive once again." *See* Exhibit L. Defendant Buccellato also stated there "*that our program has not changed or been diminished in any way.*" (emphasis added). These statements *directly contradict* statements in defendant Buccellato's affidavit sworn to, and filed with the Court on, January 19, 2009 (Doc. no. 97) that HLA has "suffered drastic decreases in revenue over the past 2.3 years" (*id.* at ¶ 5); that HLA "has had to substantially cut the number of teachers, counselors and other employees" (*id.* at ¶ 6); and, ultimately, that even if the HLA entities and defendant Buccellato "combined" their assets, "*no meaningful payment could be made to the plaintiffs at this time.*" *Id.* at ¶ 10 (emphasis added); and

- In February 2009, the Defendants effectively *admitted* that they have an ability to pay the plaintiff Class. In particular, in a telephone call on February 20, 2009 and a confirmatory email on February 23, 2009, Defendants represented that they had the wherewithal to pay plaintiffs at least $20,000 per month beginning on April 1, 2009. *See* Exhibit M.

14.    Based on the record before the Court, plaintiffs request that the Court:

- compel Defendants to produce the documents agreed to during the parties' March 11 meet and confer and as set forth in plaintiffs' March 25 correspondence (Ex. K);

- compel Defendants to document fully their professed inability to pay the class anything "meaningful," failing which the Court should impose costs and sanctions on the Defendants; and

- order Defendants to pay plaintiffs' counsel their costs and expenses and reasonable attorneys' fees incurred and disbursed in connection with this Motion and the other ongoing post-judgment proceedings plaintiffs have been forced to pursue as a result of Defendants' default.

## **ARGUMENT**

Under Rule 69(a), "the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974). "A judgment creditor is entitled to discover the identity and location of any of the judgment debtor's assets, wherever located." *National Service Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 250 (11th Cir. 1982).

Here, Defendants failed to pay the Settlement Fund in violation of both the parties' Stipulation and the Court's Final Judgment; they have also now failed to properly respond to plaintiffs' Post-Judgment Discovery -- even after being directed by the Court to do so. Plaintiffs' Post-Judgment Discovery seeks

information not concerning issues of liability or damages, but instead concerning only Defendants' financial dealings and status in view of Defendants' own claimed inability to pay.  Defendants' discovery responses to date fail to reveal their current financial condition and their recent financial transactions, and fail to account for changes in Defendants' financial condition since they filed with the Court their sworn financial data on December 13, 2007. *See* Doc. no. 85-3, at exhibit D therein (containing defendant Buccellato's October 3, 2007 Affidavit and Defendants' financial statements).

In particular, Defendants have refused to identify, and produce statements for, each of their banking accounts.  Defendants have also failed to provide information concerning the identities of their receivables, information as to the recent liquidations of their receivables, and the details of a significant land sale. Nor have the Defendants documented defendant Buccellato's personal assets and ability to make a partial payment; what steps the Defendants allegedly took between December 17, 2007 (when they agreed to pay the $400,000 and the parties submitted their settlement to the Court) and December 31, 2008 (when the payment was due) to pursue a refinancing; what steps the Defendants are allegedly taking presently to pursue a refinancing; what payments have been made by the

-11-

HLA entities to defendant Buccellato, defendant Buccellato's partner, Kenneth

Spooner, and others related to Buccellato since September 11, 2006, when this

litigation was brought; and what payments have been made by the Defendants to

any other person or entity since September 11, 2006 (other than in the normal

course of business, such as for the school's operations).  Nor is there sufficient

information concerning transfers of property since September 11, 2006 by or

between the Defendants and any other person or entity, or the Defendants' actual

present financial condition (including cash and account balances, cash flow,

accounts receivable and any other property interests).

Instead, Defendants have continued to be both evasive and incomplete

throughout the post-judgment proceedings.  As a result, plaintiffs have been forced

to repeatedly pursue documents and information concerning Defendants' financial

status in circumstances where the Defendants claimed inability to pay is the

exclusive reason why any post-judgment proceedings are even necessary in this

case.

Accordingly, the Court should direct the Defendants to document their own

claimed inability to pay anything "meaningful."  *See, e.g., Steed v. EverHome*

*Mortg. Co.*, No. 08-13476, 2009 WL 139507, at *3 (11th Cir. Jan. 21, 2009)

-12-

(holding that under Rule 37, "evasive or incomplete disclosures" are tantamount to

"a failure to disclose when ruling on a motion to compel"); *Interland, Inc. v.*

*Bunting,* No. 04-cv-444, 2005 WL 2414990, at *4-7 (N.D. Ga. Mar. 31, 2005)

(granting motion to compel because non-compliant party provided incomplete and

evasive responses). *Accord* Fed.R.Civ.P. 37(a)(4) (an evasive or incomplete

disclosure, answer, or response must be treated as a failure to disclose, answer, or

respond).

In accord with LR 37.1(A)(2)-(5), plaintiffs move pursuant to Fed.R.Civ.P.

37(a)(1) to compel Defendants' full and complete document productions as

follows:

## **Defendants' Failures to Produce**[4]

### *Production Deficiency #1*

**Production Requested:** (a)    An identification of all checking, savings, money
market, investment, retirement, brokerage, loan, line of credit, mortgage or other
banking accounts maintained by or on behalf of any of the defendants, or in which
the defendants have any ownership interest, whether in whole or in part, since

---

[4]    The information as to the Production Requested is taken from
plaintiffs' March 12 letter (*see* Ex. E) that sets forth the documents Defendants
agreed to produce in the parties' meet and confer, but ultimately did not produce.
Defendants' Stated Position is quoted from Defendants' March 25 email (*see*
Ex. K), the most recent applicable correspondence plaintiffs received from
Defendants.

January 1, 2007. This includes, but is not limited to, all accounts maintained with Regions Bank, Suntrust Bank, United Community Bank, Wachovia Bank, Mountain State Bank, Branch Banking and Trust, Nexity Bank, Lumpkin County Bank, First National Bank of Cherokee and Merrill Lynch, and also includes all accounts for each of the four defendants, any of their predecessors, successors, parents, wholly- or partly-owned direct or indirect subsidiaries, divisions, affiliates and joint ventures, including but not limited to Ridge Creek, Inc., Mountainbrook Academy, Creekside Wilderness Academy, L & K Holding Co., L.L.C., and Georgia Tent & Awning, Inc.

**Defendants' Stated Position:** (a) Defendants, in their initial response and in their supplemental response, have identified all of the checking accounts of defendants. Ridge Creek, Inc., L & K Holdings, LLC and Georgia Tent & Awning, Inc. are not defendants. They are separate legal entities which are not parties to this case and thus not required to respond to any interrogatory or request for production of documents propounded by plaintiffs to the defendants. Creekside Wilderness Academy is a subsidiary of Ridge Creek, Inc. and thus the foregoing statement also applies to it.

**Outstanding Production Deficiency:** Defendants have failed to produce even *any* account information for Hidden Lake Foundation Inc. -- which undeniably *is* a defendant. Nor have they produced account information for the related and affiliated entities known as Ridge Creek, Inc., Mountainbrook Academy, Creekside Wilderness Academy, L & K Holding Co., L.L.C., and Georgia Tent & Awning, Inc.[5] Defendants' response that these affiliated businesses "are not

---

[5]      Notably, Ridge Creek, Mountainbrook Academy and Creekside Wilderness Academy are businesses that Defendants admit are wholly-owned by defendant Buccellato and that are operated as schools at the same address as Hidden Lake Academy at 830 Hidden Lake Road in Dahlonega, Georgia.

-14-

defendants" is entirely besides the point; those businesses are undeniably owned in whole or in part by defendant Buccellato, and represent a potential source of assets from which defendant Buccellato -- who again, *individually*, is obligated to pay the settlement in full (*see* Doc. no. 85-3 at ¶ 4(a)) -- may tap in order to pay the settlement.

Defendants have also failed to provide information as to defendant Buccellato's personal assets, accounts and wherewithal.  Further, whatever documents the Defendants may claim may have been allegedly destroyed in the fire that reportedly took place at the school many months ago, financial information concerning defendant Buccellato's personal assets should still be available and produced.[6]  There are no identified accounts that even purport to pertain to defendant Hidden Lake Foundation, Inc. or to defendant Buccellato's other related businesses, Mountainbrook Academy and Creekside Wilderness

---

Similarly, Defendants admit that defendant Buccellato owns 50% of L & K Holding Co., L.L.C., and owns 33.3% of Georgia Tent & Awning, Inc.; plaintiffs believe that Buccellato's partner, Ken Spooner, owns all or part of the balance of those businesses. *See* Ex. H, at HLA DEFS PJ 000050 to 51.

[6]     To the extent that Defendants claim that the fire destroyed applicable financial documents, Defendants should be compelled to obtain copies from their agents and other third parties, *i.e.*, their own banks and other entities.

-15-

Academy; yet, defendant Buccellato apparently only recently established those businesses despite swearing to the Court in an Affidavit on January 19, 2009 that he lacks an ability to pay anything "meaningful".

### *Production Deficiency #2*

**Production Requested:** (b) Production of all monthly and annual statements since January 1, 2007, for the accounts identified in (a) above.

**Defendants' Stated Position:** (b) Contrary to the assertion in sub-paragraph (b) of [plaintiffs'] letter of March 23, 2008, the defendants did produce certain checking account statements as part of their supplemental response. See Exhibit A-1 thereto.

**Outstanding Production Deficiency:** Defendants have produced only certain limited bank statements for 2008 and 2009 covering themselves. They should be compelled to make a complete production covering not only themselves, but also the clearly related and affiliated businesses which they also control. Along these lines, Defendants have failed to provide even *any* account statements for Ridge Creek, Inc., Mountainbrook Academy, Creekside Wilderness Academy, L & K Holding Co., L.L.C., and Georgia Tent & Awning, Inc. -- despite the fact that defendant Buccellato controls all such entities. Defendants have also failed to produce *any* account statements concerning themselves or any other person or entity for 2007, contrary to their assurances that they would do so.

-16-

### *Production Deficiency #3*

**Production Requested:** (c)  Production of the executed purchase agreement for the 2008 sale of 23 acres of land in Lumpkin County by L & K Holding Co., L.L.C. to The Nature Conservancy.

**Defendants' Stated Position:** (c)  Contrary to the assertion in sub-paragraph (c) of [plaintiffs'] letter of March 23, 2008 [*see* Ex. I], defendant L.C. Buccellato produced as Exhibit C-1 of defendants' supplemental response [*see* Ex. H] a copy of the settlement statement regarding the sale by L&K Holdings, LLC of approximately 23 acres to The Nature Conservancy.

**Outstanding Production Deficiency:**  Defendants have yet to produce the executed purchase agreement.  In light of the "settlement statement" provided in Defendants' supplemental production, plaintiffs have requested copies of the first and second mortgage loans, and copies of all checks and other disbursements related to the proceeds of that land sale, including especially all proceeds that were received by any of the Defendants either directly or indirectly.

### *Production Deficiency #4*

**Production Requested:** (d)  Production of the executed promissory note, and the related lien or other property encumbrance, for the $172, 000 debt owed to The Morris Law Firm by defendant Buccellato.

**Defendants' Stated Position:** (d)  Contrary to the assertion in sub-paragraph (d) of your letter of March 23, 2008, defendants produced as part of Exhibit D of defendants' supplemental response copies of the promissory note and deed to secure debt executed by L.C. Buccellato in favor of the Morris Law Firm.

-17-

**Outstanding Production Deficiency:**  Defendants' discovery productions have provided differing information as to Defendants' debts and property encumbrances.  For the debts identified in Defendants' responses to plaintiffs' Interrogatory nos. 3 and 6, plaintiffs also request copies of the promissory notes and other related agreements, as well as schedules for payments on those debts.

### *Production Deficiency #5*

**Production Requested:**  (e)  Production of the judgments, or other agreements, evidencing the following debts (listed as creditor, debtor and amount):

| | | |
|---|---|---|
| Willie Locust | HLA, Inc. | $107,184.21 |
| North Georgia Credit | Hidden Lake Academy | $12,222.75 |
| North Georgia Credit | Hidden Lake Academy | $13,734.96 |
| Doc Martin Construction Co. | Hidden Lake Academy | $17,206.75 |
| Jim Millman | HLA, Inc. | $85,939.97 |
| Robert and Nan Miller | HLA, Inc. | $91,233.00 |
| Ray and Eleanor Williams | HLA, Inc. and L. Buccellato | $46,414.70 |
| Yates Insurance Agency | Hidden Lake Academy | $14,023.00 |
| Yates Insurance Agency | Leonard Buccellato | $5,830.24 |

**Defendants' Stated Position:**  (e)  Contrary to the assertion in sub-pararaph (e) of your letter of March 23, 2008, defendants produced as part of Exhibit D of defendants' supplemental response copies of the Consent Judgments which they had identified in their initial response.

**Outstanding Production Deficiency:**  Plaintiffs request that Defendants provide the parties' correspondence related to the above debts.  Plaintiffs also request

-18-

copies of the financial data that Defendants have provided to the above creditors.

There is simply no basis justifying Defendants' refusal; by contrast, these

documents clearly are probative of Defendants' financial status.

### *Production Deficiency #6*

**Production Requested:** (f)  Production of monthly financial statements
(including a balance sheet and income statement) for each of the defendants from
July 1, 2007 up to the present.

**Defendants' Stated Position:** (f)  Plaintiffs' request for production of documents
did not request defendants to produce monthly financial statements. Therefore, to
the extent any such documents might exist, defendants have not produced any.

**Outstanding Production Deficiency:**  Defendants have yet to produce any such

data.  These financial statements either already exist or may be readily generated

by Defendants' accounting systems.  Also, at least one of the Consent Judgments

referenced in Production Deficiency #5 above provided that Defendants were to

make monthly productions of their financial statements.

This information is especially critical here since Defendants' recent

discovery responses show material discrepancies over the sworn financials that

Defendants submitted in connection with the settlement Stipulation (*see* 85-3, at

exhibit D therein).  For example, Defendants' initial discovery responses indicate

that since the December 2007 settlement, defendant Buccellato has received over

-19-

$128,000 from the HLA entities and over $64,000 from Georgia Tent & Awning.

Also, contrary to Defendants' initial discovery responses, Defendants'

supplemental responses state that Buccellato actually owns a one-third interest in

Georgia Tent & Awning.  There is simply no way for the Court or the Class to get

a clear picture of Defendants' actual present financial condition without

reconciling these many discrepancies.

### *Production Deficiency #7*

**Production Requested:**  (g)  Production of each of the defendants' federal and state tax returns, including accompanying schedules, from 2006 to present.

**Defendants' Stated Position:**  (g)  Plaintiffs' request for production of documents did not request defendants to produce any state or federal tax return.  Therefore, to the extent any such documents might exist, defendants have not produced any.

**Outstanding Production Deficiency:**  Defendants have yet to produce any of

their tax returns.  But in light of Defendants' asserted inability to pay, this data is

likewise clearly critical in assessing their financial status and should be produced.

*See, e.g.*, *T-M Vacuum Prods. v. TAISC, Inc.*, C.A. No. H-07-4108, 2008 U.S. Dist.

LEXIS 96214, at *6 (S.D. Tex. Nov. 25, 2007) (holding that "relevance of . . . tax

returns to a judgment creditor is virtually presumed"; "A tax return necessarily

contains information relating to a taxpayer's financial position, which is highly

relevant to a judgment creditor.  The tax return can verify the information

provided by the judgment-debtor concerning his assets and income, and it can

reveal a judgment-debtor's attempts to hide assets."). *Accord Maddow v. Proctor*

*and Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997) (affirming the district

court's order compelling production of an individual's income tax returns because

they were "arguably relevant"); *Huff v. Huff*, No. 04-0172, 2006 WL 2356042, at

*1-2 (N.D. Ga. Aug. 15, 2006) (estate that failed to pay outstanding judgment was

ordered to disclose its income tax returns in response to post-judgment discovery

request); *Pharmerica, Inc. v. Healthprime, Inc.*, No. 07-0207, 2008 WL 779329, at

*4 (N.D. Ga. Mar. 19, 2008) (company that owed movant $300,000 was ordered to

disclose its income tax returns).

### *Production Deficiency #8*

**Production Requested:**  In plaintiffs' correspondence to Defendants on March 23
and March 25, plaintiffs requested the disclosure of the names and addresses of all
persons who have acted in the roles of Treasurer, Chief Financial Officer and
Controller (or the equivalents thereof) for each of the defendants and for Ridge
Creek, Inc., Mountainbrook Academy, Creekside Wilderness Academy, L & K
Holding Co., L.L.C., and Georgia Tent & Awning, Inc., since January 1, 2007.
Plaintiffs also requested that Defendants' counsel provide proposed dates to take
the depositions of defendant Buccellato and several of several of Hidden Lake
Academy's current employees.

**Defendants' Stated Position:**  Plaintiffs' interrogatories did not request the names and addresses of anyone who has served as treasurer, chief financial officer or controller (or the equivalent thereof) for the defendants or for any other entity. Therefore, defendants have not identified any such person.

**Outstanding Production Deficiency:**  As noted by the Court during the March 20 hearing, Defendants should produce evidence supporting their claimed inability to pay.  Clearly a key part of this information is the identities of Defendants' own senior employees who can speak directly to status of Defendants' financial dealings and condition.

Moreover, the actual record presently before the Court on Defendants' ability to pay anything "meaningful" is at best mixed.  For example, the Defendants actually offered in February, 2009 to pay the plaintiff Class $20,000 beginning April 1, 2009, and then $20,000 monthly thereafter.  *See* Ex. M.  Where the record is clear, however, is that instead of complying with the Court's directives, Defendants have repeatedly forced plaintiffs to pursue Defendants to obtain even any meaningful financial information.[7]  In short, the Defendants

---

[7]      Another particularly telling example of Defendants' recalcitrance is their failure to cooperate even in resetting deposition dates.  In fact, these depositions needed to be reset only because Defendants failed to timely produce financial documents they had agreed to produce.  Indeed, if Defendants sufficiently documented their actual financial condition (to which they agreed to in the first place), then some or all of the depositions may become unnecessary.

should be directed to identify these individuals without further cost to the plaintiffs.

## II.   THE COURT SHOULD ORDER DEFENDANTS TO PAY PLAINTIFFS' REASONABLE ATTORNEY'S FEES AND COSTS

As discussed above, the inference is inescapable based on the undisputed facts before the Court that the Defendants' defaults have been both repeated and willful.  Accordingly, plaintiffs seek to have the Defendants pay plaintiffs' reasonable attorneys' fees and costs in connection with this motion and the parties' ongoing related post-judgment proceedings plaintiffs have been forced to undertake.  *See* Fed.R.Civ.P. 37(a)(5) (providing that if the motion to compel is granted the non-compliant party may be ordered to pay the movant's reasonable expenses, including attorney's fees). *See also Hornsby v. Three Dollar Café III, Inc.*, No. 03-1668, 2006 WL 508053, at *2 (N.D. Ga. Mar. 1, 2006) (holding that movant was entitled to recover its reasonable attorney fees and expenses incurred in bringing the motion to compel); *Pharmerica, Inc. v. Healthprime, Inc.*, 2008 WL 779329, at 4 ("The party opposing a properly filed motion to compel may be required to pay the costs associated with filing that motion.").

## CONCLUSION

Plaintiffs respectfully request that the Court: (1) compel Defendants to produce additional discovery; (2) compel Defendants to document their claimed inability to pay anything "meaningful"; and (3) order Defendants to pay to plaintiffs' counsel the reasonable fees, costs and expenses plaintiffs' counsel have been forced to incur and disburse in connection with this motion and the parties' other post-judgment proceedings.

Dated:  April _29_, 2009                Respectfully submitted,

BERGER & MONTAGUE, P.C.                  GORBY PETERS & ASSOCIATES, LLC

/s/ Lane L. Vines, Esq.                  /s/ Michael J. Gorby, Esq.
Merrill G. Davidoff, Esq.                Michael J. Gorby, Esq.
mdavidoff@bm.net                         mgorby@gorbypeters.com
Lawrence J. Lederer, Esq.                (Georgia Bar No. 301950)
llederer@bm.net                          Mary Donne Peters, Esq.
Lane L. Vines, Esq.                      mpeters@gorbypeters.com
lvines@bm.net                            (Georgia Bar No. 573595)
(Admitted *Pro Hac Vice*)                Two Ravina Drive, Suite 1500
David Anziska, Esq.                      Atlanta, Georgia 30346-2106
danziska@bm.net                          Telephone:  (404) 239-1150
1622 Locust Street                       Fax:  (404) 239-1179
Philadelphia, Pennsylvania 19103
Telephone:  (215) 875-3000
Fax:  (215) 875-4604

*Counsel for the Settlement Class Representatives and the Class*

malta465348-005.wpd

-24-

**IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

|  |  |  |
|---|---|---|
| Jill and Ron Ryan, *et al.*, individually and on behalf of others similarly situated, | : : : : : | |
| Plaintiffs, | : | No. 2:06-CV-0146 (WCO) |
| -against- | : : | Class Action |
| Hidden Lake Academy, Inc., *et al.*, | : : | |
| Defendants. | : : | |

## **CERTIFICATION**

Counsel for the Settlement Class Representative plaintiffs hereby certifies

that the text of this document has been prepared with Times New Roman 14 point,

one of the fonts and point selections approved by the Court, and complies in all

respects with Local Rule 5.1(C) of the United States District Court, Northern

District of Georgia.

This 29th day of April 2009.

BERGER & MONTAGUE, P.C.

/s/ Lane L. Vines, Esq.
Merrill G. Davidoff, Esq.
mdavidoff@bm.net
Lawrence J. Lederer, Esq.
llederer@bm.net
Lane L. Vines, Esq.
lvines@bm.net
(Admitted *Pro Hac Vice*)
David Anziska, Esq.
danziska@bm.net
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone:  (215) 875-3000
Fax:  (215) 875-4604

GORBY PETERS & ASSOCIATES, LLC

/s/ Michael J. Gorby, Esq.
Michael J. Gorby, Esq.
mgorby@gorbypeters.com
(Georgia Bar No. 301950)
Mary Donne Peters, Esq.
mpeters@gorbypeters.com
(Georgia Bar No. 573595)
Two Ravina Drive, Suite 1500
Atlanta, Georgia 30346-2106
Telephone:  (404) 239-1150
Fax:  (404) 239-1179

*Counsel for the Settlement Class Representatives and the Class*

# IN THE UNITED STATES COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

Jill and Ron Ryan, *et al.*,
individually and on behalf of others
similarly situated,

        Plaintiffs,

     -against-

Hidden Lake Academy, Inc., *et al.*,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

No. 2:06-CV-0146 (WCO)

Class Action

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the **MOTION AND INCORPORATED MEMORANDUM OF LAW OF THE SETTLEMENT CLASS REPRESENTATIVES TO COMPEL DEFENDANTS TO RESPOND TO PLAINTIFFS' POST-JUDGMENT DISCOVERY REQUESTS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record:

Robert A. Barnaby, Esq.
rbarnaby@dhnc-law.com
**DONAHUE, HOEY, NELSON & COHEN, LLC**
1050 Crown Pointe Parkway
Suite 1600
Atlanta, GA 30338

*Attorneys for Defendants Hidden Lake Academy, Inc., HLA, Inc.*
*Hidden Lake Foundation, Inc., and Dr. Leonard Buccellato*

Respectfully submitted, this 29th day of April, 2009.

**GORBY PETERS & ASSOCIATES, LLC**

/s/ Michael J. Gorby, Esq.
Michael J. Gorby, Esq.
(Georgia Bar No. 301950)
Mary Donne Peters, Esq.
(Georgia Bar No. 573595)
Two Ravinia Drive, Suite 1500
Atlanta, Georgia 30346-2104
(404) 239-1150
(404) 239-1179 Fax
*Attorneys for Plaintiffs and the Class*